Is Fence versus beard mr. Kauffman If it please the court I am David J Kelton law of the Cambria County District Attorney's Office appearing for the appellant and respondents below Jeffrey Beard William Stickman and Robert Brady violation that Judge McLaughlin found. I cannot counter or contradict the four instances of suppression of exculpatory materials that were outlined below and in fact were found in the common police port of Cambria County. Those being the detective rocks blonde headed woman subterfuge to Lashree Pletcher in order to force her to coerce her into wearing a wire when she spoke to Mr. Simmons. Second would be the Mr. Canary's contact with the troopers on the gun charges against Marge Cobar the late Marge Cobar the Commonwealth's principal witness in this case. The fact that three of the four Pennsylvania State Police crime lab reports on the Cobar rape were not disclosed and the non-disclosure of the fact that Marge Cobar's failure to identify Mr. Simmons from a mug book review that happened between a positive photo array identification and a subsequent lineup identification of Mr. Simmons. Would you agree that that was the most severe of the four pieces of evidence that was withheld? Yes I would think that that would be the most severe particularly in light of the fact that the lab reports had to do with the rape the I would agree that that would be the most serious. If that had been known regardless of what the defense would have done about the lineup wouldn't the judge normally give the jury that's old standard charge 4.07 and tell them to consider her identification testimony with caution? You're familiar with what I'm talking about. Yes we have in the state context we would have a similar instruction. That's what I'm talking about. Two of us have been there. And the argument that would have been subsequent identification in the requested lineup both in which she was positive and those would be a much more reliable indication than going through. Wouldn't the jury nevertheless usually be told to consider that subsequent identification with caution? Isn't that what's usually done? Yes I mean there would be I mean that one way or the other that would be brought to their attention even if the court did not make a specific instruction. Having conceded four separate Brady violations don't you think that the cumulative effect on the jury was such that it undermined the verdict of the jury? Well our response to that is that looking at each of them separately as the common pleas court did in the PCRA case they found no prejudice on any of the four. Why do we look at the PCRA court rather than the Supreme Court of Pennsylvania didn't decide the case on the merits. They decided on procedural grounds. I might disagree with you but if they had decided the case on the merits we would look at the Supreme Court of Pennsylvania. Yes I think that that would be correct. They did decide the issue didn't they? Insofar as Mr. Simmons is concerned. They decided the they affirmed the common pleas court but they did it as I read the opinion on procedural grounds briefing deficiencies. That doesn't mean that we that it would not be a decision on the merits and it would not that decision would not be entitled to deference. Well that's fine that's fine if it's not on the merits then it's it's a procedural decision which we review de novo. Yes. That be correct but we still look at what the Pennsylvania Supreme Court with two in the majority concurred to concur the result. There was no it was an opinion announcing the majority so it was not a majority opinion and in fact I think on that particular time period there were three or four similar decisions all announcing the judgment of the court for similar grounds. The dissenters certainly engaged the issue. I think if you're I must agree that I thought his analysis of the real issue was on point and was accurate. I cannot disagree with that. Good. Let me ask you one factual question. Am I correct that before Ms. and in the the photographs that were shown to her not the not the first time but the second time that she had already seen Mr. Simmons's photograph in the news media is that I believe actually established? I believe that that is indeed correct. She had seen it in a newspaper article and I don't believe anybody that that's an accurate observation. I'm curious what standard we have the state trial court reviewing these the merits of these four claims but even they did not review the cumulative effect of these four claims. Am I correct in that? That is correct. They did not address they did not cumulate they addressed each separately. Would we use pre-AEDPA renovo review to review the the cumulative effect since that's an issue that was really not my argument and I set forward in the brief I think there is a if one attaches a presumption of correctness to the common pleas determination factual determination that there was no prejudice in each then I would say that putting them together there's still no prejudice. I mean my would be that for materiality though confidence in the verdict is certainly a factor in the jurisprudence in this area they have not. But can't it be like an extension ladder can't the sum of the of cumulative effect must be addressed but the contention by the appellant in this case is that looking at the facts of this particular case the cumulative effect was not material. Well of course the district court disagrees with that position. Why is the district courts analysis incorrect? I think it's because the district of court focused upon confidence in the verdict well and did not look at all at the reasonable probability of a different result which I think is the more concrete and objective standard. The district court looked at all four claims of Mr. Simmons all four amounting to essential Brady violations? Yes. Is that correct? And any one of which may not have affected the verdict but then the district court said all four provided substantial assistance to the defendant in disputing the prosecution's witnesses. What's wrong with that analysis? How do you know how the how the jury might have come out had this visit had these Brady violations not occurred? My response to that would be that the common pleas court who was there heard the witness saw these facts found in each case that there was no prejudice and again I think we can or one can put all four together there is not prejudice or materiality. How much do we credit or value defense counsel's assertion that had he known about the failure to identify earlier he never would have asked for a lineup and that this was you know in effect a game changer? Well, the I would not second-guess the analysis I believe that would have been Mr. Satill the leading defense counsel in the case and but I think that nonetheless that is a hindsight conclusion because we still had and I think this would be the better identification from the photo array that he would have to have countered so he would add a plus and a minus so I think he might arguably might still have requested the lineup to overcome the initial photo array identification. Cobo was a major very major witness in this case because she identified Mr. Simmons she identified him as as her attacker in the course of a sexual assault and she stated that Simmons mentioned the decedent's name so that she put the defendant in in the in the victim's house essentially yet Cobo had a gun charge. Yes. Right? She falsified information to get a weapon and the prosecution knew about it but didn't disclose it to the defendant. Isn't it fair to say that she was expecting favorable treatment from the prosecution for assisting the prosecution in this case in fact expecting that the gun charges would be dismissed? Well I think as a matter of fact isn't that exactly what happened? The grabberment isn't so much that they suppressed the gun charges because that was public knowledge. The fact was that the favorable or the letter or that no letter the contact that Mr. Kinneary is the leading prosecuting attorney made with the state troopers was not disclosed which would have certainly been a factor in impeaching Marge Cobo as a weren't you expecting this because it didn't in fact the Commonwealth contact the troopers to drop these charges or to not follow through with the charges. Why doesn't the failure to disclose that information to the defense causes to question the validity of the verdict? Or not are you Well that goes to credibility and I think the other factor that you must recognize in the whole credibility but she identified the defendant as her attacker and as being in or near the victim's house. So if her credibility could be undermined isn't that an essential piece of information for the defendant but our contention is that it would not have been material. The whole reason that Ms. Cobo. Isn't materiality a mixed question of law and fact and haven't we said in that situation that the presumption of factual correctness does not apply to mixed questions of law and fact? I would with mostly a factual determination. I would I would repeat that the reason that that Ms. Cobo purchased the gun because she was afraid of the attacker which would have potentially well that would have backfired on the defense. How about the failure to disclose three separate rape kit results that did not establish that Simmons was the sexually assaulted Cobo. Don't you think the defense could have benefited by having that information before trial? Well one of the reports had to do with the hair not being either Cobo's or Simmons but being a third parties which can be third person that was applied there at any time. Could have been a lot of things but Pennsylvania does allow that type of evidence doesn't it? Yes. It could be there could be impeachment upon that. But you don't think that the combination of miscues by the Commonwealth were sufficient to undermine the verdict in this case? That is the position of the respondents. Good. Anything else you want to tell us? No. Good. Thank you very much. Mr. Laurie. May it please the court. Matthew Laurie on behalf of the habeas petitioner Ernest Simmons who is the appellee in this court. As the court is aware at trial and in the post-conviction proceedings in state court the Commonwealth did not disclose four separate categories of evidence that could have been used at trial to attack the Commonwealth's case. And in fact throughout those the Commonwealth fought very hard against allowing us to bring this out. Here in the in district court and here opposing counsel Mr. Kaltenbaugh has very honestly and honorably conceded a number of of important points that there's no there's no procedural default issue there's no exhaustion issue. He's conceded that the prosecution had a duty to disclose all of this evidence that the Commonwealth's key witnesses and that the materiality of all these items under Kyle's has to be considered collectively but that the state courts failed to do that. Now there was a bit of discussion about what the proper standard of review would be and and I think that there's that there is a under Thomas that came out recently the court should be looking at what the Pennsylvania Supreme Court did and I think there's a strong argument that there should be de novo review but but leaving that aside. Do we have to decide that issue? I'm not sure that you have to decide it I really don't think so because even even if you apply 2254 D review what you have is that that clearly neither of the state courts did the kind of cumulative collective analysis that Kyle says you have to and the bank says you have to do and so if it's 2254 D or it's de novo you you end up in the same place that that didn't happen. What did the Pennsylvania Supreme Court decide in your view? They certainly issued a final judgment. They issued a final judgment that does have preclusive effect and I think there's there's really two possibilities well they're split three ways so there's there's two two justices who decided purely on procedural grounds there's two justices who looked at the evidence and said Mr. Simmons should win and there's three justices who say nothing and so you could either assume that the three justices in the middle were more or less going along with the with the lead opinion that was procedural or you could say they were going along with the PCRA opinion which was not you know not doing the collective analysis but I don't see any way that you could think that the three justices did a collective Kyle's type analysis of all the evidence. Can we only I'm sorry can we at least say that this Pennsylvania Supreme Court definitely decided the issue as the four claims asked him Mr. Simmons so that we have a judgment. Oh there's definitely a judgment yes yes your honor yes the opinion announces the judgment and it was concurred in by the middle of three so yes there is there is a judgment. Does it matter whether they were decided on procedural grounds or or on the merits? Well I think the only the only way that it matters is in determining whether to apply 2254 D review or de novo review. I think if you look at what Judge McLaughlin did Judge McLaughlin said well it is 2254 D review of the Pennsylvania Supreme Court and then he said well you know we conclude that the improperly suppressed evidence resulted in a verdict unworthy of confidence and there's been some discussion of what standard he was 566. A couple paragraphs down he says although we cannot say with certainty that the jury would have reached a different conclusion Simmons has demonstrated a reasonable probability that it would have done so. So so he was clearly looking very carefully at what the state courts did at all the evidence and determined that applying 2254 D Mr. Simmons should win. Yes Mr. Kaltenbaugh says that even if you aggregate the four separate claims even if you look at them cumulatively you you still end up with the situation where the verdict should stand and the verdict in fact was not was not impugned by Brady violations. Well obviously we disagree and in fact the only the only three judges who have looked at it cumulatively are Judge McLaughlin and the dissenting justices in the Pennsylvania Supreme Court and they all said in very similar language really that that if you look at it cumulatively Mr. Simmons that the Brady violations were material and that's that's clearly the correct result in this case because first of all you know Margaret Cobol was clearly central to the Commonwealth's case. They they were a key piece of evidence as far as the Commonwealth was concerned at trial and and but in order to convict Mr. Simmons of murder the jury was going to have to believe both that Mr. Simmons attacked Ms. Cobol and that he made this statement about anakinase during the assault. Now as Judge McLaughlin found but for the suppression of the evidence the four different categories of evidence that was not revealed to the defense the jury would have known first that there was no physical evidence to corroborate her story not not any physical evidence to corroborate her story that there was an assault. Secondly because of the lab reports which were neutral the lab reports yes and secondly they would have known that that her identification of Mr. Simmons was was subject to a lot of questions. First she told the the first officer the day afterwards she said she didn't get a good look at the person who attacked her and then she uh she was officer Krug that was officer Krug yes and then she didn't get a good look at I'm sorry she she failed the um the mug book identification and and um Judge McLaughlin talks about this as well and then she picked Mr. Simmons photograph from a photo array after she had already seen uh his picture in the media on more than one occasion and she didn't even decide that it was him the first time she saw his picture in the media so so that really attacks her identification and then um thirdly that by the time she changed what she who uh assaulted her and related this statement uh that the the assailant purportedly made something she had not again she didn't tell officer Krug that she had a motive to help the police because of the the gun charges against her and and finally that um uh initially uh Lachery Pletcher, Mr. Simmons' girlfriend, gave gave sworn testimony that he was home by 10 p.m. well before the assault on Miss Koba and she also changed her testimony to be favorable to the prosecution and she did so in response to the uh the threats of prosecution and the continuing conduct of Detective Rock who who by the way um was later convicted of assaulting a suspect. How do you know that she did it uh on the basis of threats of prosecution as opposed to she merely wanted to correct a misimpression or a misstatement that she to help the prosecution and the police because she um she agreed to wear a wire she agreed to do all these things and she she testified over and over again I did that because I felt threatened I did that because I wanted to get Detective Rock off my back I did that because I was afraid that I would be charged uh as in in the homicide case and so um the the inference would clearly be there for the jury to as uh as Judge McLaughlin said um uh that had the jury learned of this information it may well have distrusted her testimony it may have found that her recollection of when Simmons came home changed because she feared prosecution as an accessory in the Knays case and the defense would have had compelling support for its suggestion that she changed her account of when conflict with the prosecution's theory because when she when she was talking when she gave her initial testimony in August uh Ms. Koba had not talked to Detective Rock at that point Ms. Koba talked to Detective Rock in October and so the the the thing that changed between August when she said he came home at 10 p.m. and trial when she said he came home much later is that now the prosecution uh needed that testimony to change because otherwise Mr. Simmons had an alibi. She also said that when he got home at 10 o'clock he was just fine pardon me he was just fine when he came home at 10 o'clock yes that's right later she said that he was falling down drunk yes that's correct very big uh contradiction in her testimony that is correct what did the Pennsylvania Supreme Court say about the failure to make the identification from the mugshot they they seem to discount its significance because of they um several it was a few hundred pictures or the Pennsylvania Supreme Court did discount its significance um they said that it that well what they said was that that the failure to identify him from the mug book paled in significance compared to the lineup and in saying that they they ignored the the the testimony uh that um if the defense counsel had known about the failed identification they wouldn't have requested a lineup which bag and and as we know United versus Bagley says you have to look at how the failure to disclose affects the defense preparation so I think that even on that point they were they were unreasonably applying Bagley okay well under on that particular point do we do we consider defense counsel's statement that he would not have asked for a lineup had he known of the prior failure to identify or do we consider it in a in a more objective way that is a it's reasonable for a defense lawyer to have taken this position that is how do we value or how do we look at defense lawyers actual statement how how significant is his statement well as opposed to what a reasonable defense lawyer might have done under the circumstances I I think it's I think it's highly significant I think that they that they both end up in the same place because uh defense counsel were in a position where I I think it's pretty clear from the testimony that they had serious doubts about Margaret Koba's statement but they didn't have anything really to challenge it with you have to remember they at the time they requested the lineup they also didn't have officer Krug's report so they didn't know that there was a problem with identification at the beginning they had this so all they knew about was a photo array they didn't have a way to attack the identification and so they said all right let's go for a lineup but if it's I think it's both what they testified to and it's reasonable to say defense counsel isn't going to ask for a lineup if they know first that the person said I didn't get a good look at the suspect and second that the person did not pick pick the suspect taking a heck of a chance is what you're saying by taking the lineup at that point yes exactly and that's and they acknowledge that they said it was a very risky strategy but in the situation they were in they thought it was the best thing to do if we if we agree with the district court that the Pennsylvania Supreme Court decided that very issue on the merits and that therefore we have to be very deferential to the Supreme Court's ruling can we nevertheless take that into account in the aggregate in other words consider it with all the other claims on on the question whether the jury verdict was was compromised I'm I'm not sure if I followed entirely but but here's what well we have to be very deferential to the Pennsylvania Supreme Court and and so deferential that we might have to say that that is correct that uh and that this particular claim is not that perhaps not that important because he was identified by a lot of people at the scene oh well I I totally I totally disagree with that as a as an accurate reflection of the record let me let me not but that that's not my point the point is that the Pennsylvania Supreme Court decided this issue on the merits you agree um I I think it's I think it's unclear but what is entirely clear is that they never did a Kyle's analysis and so I don't think you can I I guess you could look at what they said about about the record and if you want to look at that deferentially even if you do that um it's it's unreasonable in light of the record about about um all the problems with the identification witnesses which are laid out in Judge McLaughlin's opinion and it's unreasonable under Bagley because they didn't they didn't look at how would this have affected the defense preparation and uh there's no Kyle's analysis I don't think you can I don't think you can take out what's clearly a Brady violation from the Kyle's analysis and and without without the state court having ever done the Kyle's is that all four claims have to be considered in the Kyle's analysis absolutely did the Supreme Court of Pennsylvania have before it in the record the statements of this this witness about you know the detective pressure being to that effect you know um yes that well yes that was in the yes it wasn't addressed that either they didn't address that they they didn't address that on procedural grounds and but there's no argument here that that there's no dispute that the procedural grounds they relied on were not adequate to to foreclose review and there was no rebuttal of that evidence that was elicited with respect to pressure being brought no there was no rebuttal of it anything else you want to tell us um I have nothing further your honor your honors the uh we would simply urge that the court uh affirm the very uh diligent and careful opinion of Judge McLaughlin good thank you Mr. Cottonball all right I've used up my time all right very good thank you we thank counsel for excellent argument in this matter we will take the case under advisory